Thank you, Your Honor. This is a petition for review from a decision of the Board of Immigration Appeals. It presents but two issues. It presents the issue of whether or not the credibility finding by the immigration judge and by the board meet the standard for credibility. And secondly, whether or not the evidence presented gives a good enough basis for the board to make a decision. And thirdly, whether or not the evidence presented gives a good enough basis for the board to make a decision. In that it talks about threats as presenting a plausible, reasonable basis for a fear of future persecution and that the facts support it. And it is a case in which a man, a Vietnamese man, who is a deeply religious Christian man, engaged in certain conduct with regard to a Christian group of Hmong persons in Vietnam, came to the United States to... gather up means to be of assistance to those people. And he presented evidence of the persecution of those people. The evidence also suggested that... did not suggest but had documentation to show that the government of Vietnam had taken a position that the Hmong people and their religious activities were an unstabilizing force in Vietnam, which they disapproved, and that there was reason to believe that people who engaged in such conduct were doing it at the instance of agencies of the United States government. So what do you make of the country reports that indicate, although there may be some concern about the Hmongs and their worship, that the vast majority of Hmongs are able to worship freely? Well, the country reports are one basis of information in this area, but they do not resolve that question. The other evidence indicated that there was concern about the government and the fact that they, as a matter of fact, the respondent flatly stated that these persons were being allowed to practice their religion when he was asked that question in the immigration court proceedings. I think the point is more whether or not his activity in supporting this group by coming to the United States, by arranging for resources to get to them, was an act that the government of Vietnam directed against him as an individual, and that his association with the people that had traditionally been not cooperative with the government of North Vietnam made that assumption by the government of Vietnam more frightening. That would be my answer to that. Of course, the key here is the adverse credibility finding, and so we don't get to your client's testimony or the truth of it unless that's overcome. How do you think the BIA and IJ aired in their analysis of the credibility of your client? Well, the focus of their argument seems to be on how the government of Vietnam contacted his home, and whether it was a call or a broken door. That seems to be the point that keeps coming up and coming back. Now, I can't speak for everybody in their experiences in growing up, but in my experiences, making a call on someone else's house could very easily not be a telephone call. People go to a house, and why that has to be translated into, it must have been a telephone call is difficult. There's two spins one can put on that, and it's exactly because there are two spins that one can put on that phone call that you're hurt by the standard of review here, which is if any, the factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. So if it could go either way, this call could go either way, your client loses. Well, Your Honor, I think that just making the arbitrary decision that I'm going to interpret call to be a telephone call is taking the argument I think it's a trivial inconsistency, and I want to point out also that there was a point where he gave additional information that was not in the in his initial testimony based upon cross-examination. Well, and the government made a point to say that he should have put it into his statement. I suggest to you that if the government chooses to ask a question and they get an answer they don't expect, it's really kind of tough to say he should have put it into his statement. I think that on the whole, his testimony is credible, and I think the government had a duty to take into account the context in which this original statement was made. After all, it was made at a time he was detained immediately upon gain off an airplane. It was done in custody by a lawyer taking notes that was then representing him, and to think that there is no sensible reason that it could be more detailed when he was on an examination that took a considerable period of time followed by a cross-examination, and the mere fact that it contained words in it that were in his testimony that were not in the statement does not suggest lack of credibility. You have about a minute and a half left. Do you want to reserve? I do. Thank you. We'll hear from the government. May it please the Court. Jonathan Robbins here on behalf of the Respondent Eric Holder. Good morning, Your Honors. Well, as Your Honors have alluded to, the key question in this case really revolves around whether or not the record compels reversal of the immigration judge's adverse credibility finding. And based on the evidence in this record, it's pretty clear that the record does not compel reversal. Refresh me. Is this a post-real ID case? Yes. This is a post-real ID, which means that inconsistencies or omissions or things of the like don't have to go to the heart of petitioner's claim. But in this case, that's largely irrelevant because these inconsistencies and omissions do go to the heart of his claim. I would remind the Court that there's no presumption of credibility when an alien goes into immigration court. The immigration judge has to bring in evidence, bring in testimony, and determine whether or not what he's seeing is reliable or whether it's credible. And what the immigration judge got in this case was an evolving account of what it was the petitioner was actually claiming. I think probably one of the more compelling problems with petitioner's claim were the distinctions between his asylum statement and his application and his testimony. At first, in his asylum application, he claims that, well, they called me, and I'll get to the distinction about the telephone call in a moment, but they called me and they questioned my family. And then in the testimony, all of a sudden, not just details missing, but entire events of persecution started popping up. An automobile chase, the confiscation of his farm, unidentified equipment that he used for construction. There was his whole family was put under surveillance, going into hiding for 17 days, entire events of persecution that are just missing from the asylum application. And he claims that he was detained and didn't have an opportunity to go over the statement. But if you look at the proceedings, the immigration judge prior to the beginning of the merits hearing specifically said, did you have a chance to go over the statement with your attorney? He said yes. There was no indication that there was any problems, that the attorney had limited access to the petitioner. So if that's a claim that the petitioner wants to make, that's something that he has to bring up before the immigration judge. As far as the distinction between the telephone call and whether or not this was breaking down the door to enter, as Your Honor alluded to, that's an interpretation that could go either way. And under the standard of review, the record has to compel one conclusion over the other. But that's not the only problem. That wasn't the only distinction, this telephone call. As I said before, there was the omission of all these different events that didn't appear in his asylum statement. There were also inconsistencies in his testimony. At one point he testified that the Hmong weren't allowed to worship, and then he was forced to change his testimony to say that they were allowed to worship. He also said that it was against the law to help the Hmong, but then later had to change his testimony to say that it wasn't against the law. And these are important problems, because his whole claim is that he's assisting the Hmong and he's facing problems. So if it's not against the law to help the Hmong, why exactly is he facing problems? So, again, as far as this claim goes, I mean, in terms of an asylum claim, it's respectfully pretty weak. I mean, he's not even claiming that he was religious. He's saying basically my friends that I was helping were religious. I mean, if you want to make a claim that you're being persecuted, you really have to show the immigration judge. It's more than just meeting your burden of proof. Well, it's not more than meeting your burden of proof, but you have to show the immigration judge a reliable, credible account of what it is exactly that you're claiming. Again, as far as the Hmong even facing these problems in this defense economic area, as they refer to it, the immigration judge continued the case specifically so that Petitioner could meet his burden of showing that the Hmong actually faced problems in this area of Vietnam. During testimony, Petitioner had indicated that this was easily available evidence all over the Internet, readily accessible, and yet when the case was continued and they had their opportunity to submit evidence to that effect, they didn't have any documents which could support his claim that the Hmong were facing problems in this area, in this economic defense area. And that's significant because, again, it is the burden of the alien to meet his burden of proof with respect to establishing his claim of alleged persecution. So as far as the adverse credibility goes, I think it's relatively clear that the record doesn't compel one conclusion over the other. As far as the alternative burden of proof finding, again, to the extent that he relies on the case in Lim against Gonzalez, an alien has to show more than just unfulfilled threats in order to meet a claim of persecution. He's arguing well-founded fear of future persecution, which is different. Yeah, I'm sorry. That's what I meant to say. In order to establish that, you have to show more than unfulfilled threats. And that's essentially – Well, I don't know about that. I mean, it's a lesser standard than – with past persecution, you'd be entitled to presumption. Future, you have to show an individualized risk, and threats might be enough under that scenario. Well, it can be, but there are other factors that you have to take into – well, that your honors have to take into account, at least under the case law of this court. But, again, Petitioner was never specifically harmed or threatened. These were all indirect threats to his family. These were secondhand threats. He never faced any harm or personal violent threat. So with respect to – but, again, the court doesn't even need to get there, because the adverse credibility finding in this case is really, as far as the court needs to go. So unless there are any specific questions with respect to the details, or with respect to any burdens of proof – Any questions? Judge Fletcher? The case is a bit unusual, in that this alien doesn't himself claim to be a monk, but that he was helping them. And that's a rather appealing reason, that if he's willing to step out himself and get himself endangered in order to help a monk, how much consideration should we give to that? Well, given the credibility problems here, it's not – again, it's not clear that that's what he actually did. Certainly, if somebody steps up on behalf of someone else, that's always an admirable thing, and I wouldn't have anything bad to say about that. But I would say that it does have relevance with respect to whether or not somebody is being persecuted on account of a particular problem. For example, in this case, it's a little bit, frankly, muddled, as to whether or not he's claiming that he's being persecuted on account of his political opinion, or imputed religious opinion, or actual religion. So it would have – I think that that particular – the way the fact pattern falls out does have a particular relevance to what account persecution would be on, if this were, in fact, a credible claim of persecution. But you'd have to concede that in a hypothetical case, where you have someone who is assisting a group that is being persecuted, certainly relief can be granted on the basis that the views are imputed to him, or that potentially it's a separate political opinion, right? Yes. Certainly, their imputed political opinion, and possibly even imputed religion, would be a valid basis for being persecuted on account of a particular protected ground. But again, without a credible claim being set forth, that's a largely irrelevant analysis. So thank you very much for your time. Any questions?  Thank you, Your Honors. I'd just like to point out that in Jibril v. Gonzales, 423 Fed 3rd, 1129, which I believe is still being considered by this Court as a valid position, it's pointed out that the testimony that is not a model of articulation and absolutely consistent detail is not, by that means alone, inconsistent, and that, as in that case, I believe that the credibility finding against the respondent should not be sustained. And also, I just want to once again say that the evidence that the respondent submitted did contain, in what was Exhibit 9, information on the focus on Christians by the Vietnamese and their concern that that conduct in assisting those people could amount to interference with the government of Vietnam by persons coming from America for that purpose. Thank you. Thank you, counsel. The case just heard will be submitted for decision. Thank you both for your arguments.
judges: Gertner, Fletcher B. , Thomas